UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. § 3512 FOR ORDER FOR COMMISSIONER'S APPOINTMENT FOR FINANCIAL THEFT INVESTIGATION | ) ) ) ) ) ) ) ) | ML No: 23-951 |

*Reference:*     DOJ Ref. # CRM-182-83019

APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Dennis E. Robinson, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Latvia. In support of this application, the United States asserts:

RELEVANT FACTS

1.      The Central Authority of Latvia, the Prosecutor General, submitted a request for assistance (the Request) to the United States, pursuant to the Treaty Between the Government of the United States of America and the Government of the Republic of Latvia on Mutual Legal Assistance in Criminal Matters, U.S.-Lat., June 13, 1997, S. TREATY DOC. NO. 105-34 (1998), as amended by the Protocol to the Treaty Between the United States of America and the

Republic of Latvia on Mutual Legal Assistance in Criminal Matters, U.S.-Lat., Dec. 7, 2005, S. TREATY DOC. NO. 109-13 (2006) (Treaty).

2.     As stated in the Request, the Economic Crime Combat Department of the Central Criminal Police Department in Riga is investigating Vladislavs Kuzmenko (Kuzmenko), Maksims Makarovs (Makarovs), and Andrejs Modins (Modins) for Illegal Activities with Financial Instruments and Means of Payment, which occurred between on or about March 16, 2016 and on or about March 19, 2016, in violation of the criminal law of Latvia, specifically, Section 193 of the Criminal Code. Under the Treaty, the United States is obligated to assist in response to the Request.

3.     According to Latvian authorities, beginning on or about March 16, 2019, Kuzmenko, Makarovs, and Modins worked together in a scheme to use forged bank cards to withdraw cash from three different automatic teller machines in Riga. The manner in which Kuzmenko, Makarovs, and Modins acquired the banking information used to forge the cards is under investigation. The subjects repeatedly attempted withdrawals against accounts held by U.S. banking institutions with no apparent connection to the subjects. Specifically, withdrawals and attempted withdrawals were made against the following bank accounts in the United States:

    a.     On March 16, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX9819, associated with an account held by Bank of America. The withdrawal attempt was unsuccessful.

    b.     On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX28026, associated with TD Bank, N.A. The withdrawal attempt was unsuccessful.

    c.     On March 18, 2016, the subjects attempted to use a forged card bearing

number XXXXXXXXXXXX4853, associated with TD Bank, N.A.  The withdrawal attempt was unsuccessful.

    d.  On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX8024, associated with Wells Fargo.  The withdrawal attempt was unsuccessful.

    e.  On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX5652.  At the time of the attempted withdrawal, the account was with BOFI Federal Bank which isnow doing business as Axos Bank.  The withdrawal attempt was unsuccessful.

    f.  On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX7786, associated with JPMorgan Chase Bank, N.A.  The withdrawal attempt was unsuccessful.

    g.  On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX68231, associated with JPMorgan Chase Bank, N.A.  The withdrawal attempt was unsuccessful.

    h.  On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX7164, associated with Citibank N.A.  The withdrawal attempt was unsuccessful.

    i.  On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX6369, associated with Navy Federal Credit Union.  The subjects successfully withdrew EUR 345 (approximately USD 374.90).

    j.  On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX9019, associated with Zurn Federal Credit Union (presently doing

business as Erie Community Credit Union). The withdrawal attempt was unsuccessful.

   k. On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX5619, associated with Fulton Bank, N.A. The withdrawal attempt was unsuccessful.

   l. On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX9018, associated with Zurn Federal Credit Union (presently doing business as Erie Community Credit Union). The withdrawal attempt was unsuccessful.

   m. On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX1588, associated with Fulton Bank, N.A. The withdrawal attempt was unsuccessful.

   n. On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX2941, associated with USAA Bank. The withdrawal attempt was unsuccessful.

   o. On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX0369, associated with Zurn Federal Credit Union. The account was later assumed by BB&T Bank (presently doing business as the Trust Financial Corporation). The withdrawal attempt was unsuccessful.

   p. On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX9011, associated with Zurn Federal Credit Union (presently doing business as Erie Community Credit Union). The withdrawal attempt was unsuccessful.

   q. On March 18, 2016, the subjects attempted to use a forged card bearing number XXXXXXXXXXXX0496, associated with Municipal Employees Credit Union of Baltimore. The withdrawal attempt was unsuccessful.

4.      To further the investigation, Latvian authorities have asked U.S. authorities to provide account records pertaining to the holder of each of the aforementioned accounts.

## LEGAL BACKGROUND

5.      A treaty[1] constitutes the law of the land.  U.S. Const. art. VI, cl. 2.  The provisions of a treaty have equal footing with acts of Congress and are binding on the courts.  See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001).  The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it."  United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted).  To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute.  Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

6.      The United States and Latvia entered into the Treaty to promote more effective judicial cooperation and assistance between the parties in criminal matters.  See Treaty, pmbl.  The Treaty obligates each party, upon request, to provide assistance to the other in criminal investigations, prosecutions, and related proceedings, including assistance in serving documents, obtaining testimony, statements, and records, and executing searches and seizures.  Treaty, art. 5(1) ("The competent authorities of the Requested State shall do everything in their power to execute the request. The Courts or other competent authorities of the Requested State shall have authority to issue subpoenas, search warrants, or other orders necessary to execute the request.")

7.      When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

orders under 18 U.S.C. § 3512.  This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
>     *        *        *
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
>     *        *        *
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

  8.  Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme."  155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2]  This section provides clear authority for the federal courts, upon application duly

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities.  See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782).  When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations.  See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

9. An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[4]  Upon such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things.  See 18 U.S.C. § 3512(a)(1)—(b)(1).  In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence.  18 U.S.C. § 3512(a)(1).

10. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents.  The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2)

---

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[4] "Section 3512 can be invoked only when authorized by OIA. . . .  Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA."  Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[5] The term "federal judge" includes a magistrate judge.  See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

administer any necessary oaths; and (3) take testimony or statements and receive documents or other things. 18 U.S.C. § 3512(b)(2). In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena." Any such subpoena may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f).

## REQUEST FOR ORDER

11.     The Office of International Affairs has reviewed and authorized the Request, and is executing the Request itself. Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512. In addition, the Request was submitted by an appropriate "foreign authority," the Prosecutor General the designated Central Authority in Latvia and seeks assistance in the investigation into Illegal Activities with Financial Instruments and Means of Payment– a criminal offense in Latvia. The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of bank records, falls squarely within that contemplated by Section 3512 and the Treaty. Finally, this application was properly filed in the District of Columbia.

12.     This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

13.     When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to

any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients.  This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance.  Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987).  Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

      14.    Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Dennis E. Robinson, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a

manner consistent with the intended use of the evidence

                         Respectfully submitted,

                         VAUGHN A. ARY
                         DIRECTOR
                         OFFICE OF INTERNATIONAL AFFAIRS
                         OK Bar Number 12199

By:               /s/ Dennis E. Robinson
                         Dennis E. Robinson
                         Trial Attorney
                         MD Bar Number 406170247
                         Office of International Affairs
                         Criminal Division, Department of Justice
                         1301 New York Avenue, N.W.
                         Washington, D.C. 20530
                         (202) 262-7597
                         Dennis.Robinson@usdoj.gov